Good morning, your honors, and for the record, my name is Palmer Huvestal. I'm appearing on behalf of the appellant, Livia Marquez-Lerma. I'm going to use ten minutes, reserve five, and my co-counsel is going to use five minutes for her client. Now, does your co-counsel want to come up and set a counsel table at this point? We... Why don't we wait until she installs herself, and then we can go forward. And just to review the betting, you've got fifteen minutes? Did I understand this correctly? And your co-counsel wants five? Right. And of your fifteen, do you want to save some of that for rebuttal? Five minutes for rebuttal. Okay, so ten minutes... I very well may not use that. Yeah, but roughly ten minutes now and five minutes later. Okay. The only issue, your honor, that I want to argue this morning is cross-examination and whether defense counsel, when cross-examining the government witness, can go into the penalties that were avoided under the terms of the plea agreement. That's the sole issue that I'm going to argue today. And what we're doing is asking the court to overrule a discretionary evidentiary decision by the district court. The status of the law right now in the Ninth Circuit begins with Davis v. Alaska. And in Davis v. Alaska, the court stated that the constitutional right to cross-examine is subject always to the broad discretion of the trial court to preclude repetitive and unduly harassing interrogation. But that limitation cannot preclude a defendant from asking not only whether the witness was biased, but also to make a record from which to argue why the witness might have been biased. And exposure of a witness's motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination. Here, that issue or that motivation boils down to the penalty that was avoided by the witness. We have in the Ninth Circuit the Jenkins case that I think you authored, wherein the district court precluded cross-examination into two words, that is, whether the witness was coerced or duressed. And we also have the Schoenberg case. And the Schoenberg case is a case in which a witness was cross-examined on the terms of the plea agreement. The same district judge prohibited cross-examination into the terms of the Rule 35 motion. And he was reversed. And I think that this Court, and incidentally, I argued the same issue before a panel in Seattle about three weeks ago with the same district judge, the same issue, and that case is called the United States v. Bramble. We don't have a decision yet out of that panel. But what we're requesting the Court to do is to extend the Schoenberg case so as to allow cross-examination into the penalties that were avoided by the witnesses. Could you be a little more precise just to make sure? What is it precisely that you wanted to inquire about, and what is it precisely that you were prevented from inquiring about? Okay. In this instance, we have two witnesses, Hector and Eduardo Fernandez. So we're talking about the two brothers who have pled, right? Who entered into plea agreements with the United States. And they were the primary witnesses for the United States in the case. And they were entered into a plea agreement with the United States wherein they would receive a benefit of a Rule 35 motion in exchange for their cooperation, which basically consisted of testimony in the assistance and prosecution of these defendants. Right. And so what we sought to do was to introduce the plea agreement and to cross-examine these witnesses on the scope of the penalty avoided. In other words, what were they facing, and what benefit did they avoid by their cooperation? And the district judge refused to allow cross-examination into the scope of the penalty avoided. I've read some of the transcript. The district judge actually allowed quite a bit of examination of both of the brothers in terms of what the plea agreement was, that they were required to testify truthfully, and that if the government didn't think that they were testifying truthfully, the government would bring the hammer down on them. I mean, I'm not sure I understand precisely what it is that you wanted to testify to that the district judge said you couldn't testify to or couldn't get testimony as to. Right. And I think this is the Jenkins case. But in essence, what the district court allowed us to do was to cross-examine that there was a contract between the witness and the government, wherein the witness would provide substantial assistance in the prosecution of the people. And in return for the testimony, the witness would get a reduced sentence. Correct. You were able to get that in as well. Right. Weren't you able to get more in? Weren't you able to get in the actual sentence that had been imposed on at least on one of the brothers, 210 months? Yes. That was like 293 months or something like that. But you also got in the paragraph which refers to the Rule 35 motion, right? Correct. So we got the contract between the witness and the government in the evidence, but we didn't get the price that was paid, so to speak, for that testimony. In other words, we did not get the penalty avoided in. Ultimately. Where did you ask for the penalty avoided? It seems to me, Your Honor, that it was at page 826, 855, 855 of the transcript. Okay. I'm sorry. I've got the excerpts here. Give me some guidance as to how do I find this. Page 855 of the transcript. Yes. Now, can you give me the page of the excerpts? Down at the bottom it says 236. 236. Okay. So I'm now on that page. I know. Well, it begins at 846. 846. At the top and 234 at the bottom. If I might approach, Your Honor, and we're displaying for this witness, Hector Fernandez, the plea agreement. And we have a discussion. And at 855, the court prohibits us at the beginning of line 3 and 4, the only sentence I don't want you talking about is this page right here, the penalties. I wish I had page 854. I mean, there are a lot of intervening pages that are dropped. I'm having trouble picking up exactly what he's referring to. Yes. And I noticed that, too, this morning as I was. And did you prepare this? This is the government's excerpt. Okay. And did you present something more thorough? Did I? Yes. No, Your Honor. I provided the citation in our brief, but I didn't provide the transcript. This is somewhat opaque to me. Pardon me? This is somewhat opaque to me. Did you say in your brief? This is quoted in the brief? Yes, Your Honor. Perhaps that would help us if you could. It's on page 11 or rather page 12 of the defendant's opening brief, the felon's opening brief. And on page 11, about two-thirds of the way down, it begins with a sentence, the district court's concern was that penalty would be going to the jury and it believed that punishment was none of the jury's business. And the page is from 817 to page 829 of the transcript. And then on page 12, at the top of the page, it begins the district court expressly instructed defense counsel to refrain from talking about the penalties that Hecker avoided by cooperating with the government. And then the transcript is 845 to 863. So do we answer? Do you have with you the language, what you asked for and what the district court directed you not to do? I understand the summary in your brief. Your Honor, I have the digital trial transcript. Well, let me put it this way. What was the great deal that Hecker got? What was his deal? Well, that's what we were prohibited. I know, but what was it? I'm asking, what was it? Well, he was charged in the indictment. No, what deal did he get? It's set forth, Your Honor, in the agreement. But he was charged in the indictment with a possible life sentence. I want to know what he got, not what he was charged with. Okay. What was the great deal, in other words? This is in Excerpt of Record 5. This is his plea agreement. He was charged in a variety of charges. And, for example, in Count 2, the penalty to which he pled guilty carried a maximum of not more than a 20-year period of imprisonment. The information to which he pled guilty was 10 years to life imprisonment. Counselor, I think you wanted to tell us, get to the jury, the difference between the sentence imposed and the sentence avoided. And as I understand it, the sentence imposed with respect to each of the brothers was stated 293 months for Hector and somewhat less time for Eduardo. That's not right. Those numbers got to the jury. Yes, those numbers got to the jury, but it could have been a mandatory life sentence. What we're trying to – what we were trying to prove is what detriment was avoided, the penalty that was avoided. Granted, 293 months is a substantial sentence, but it could have been worse. So what you're saying is the jury was never informed that the Fernandez brothers ordinarily would be exposed to a life sentence? That's correct. You were prohibited from telling your jury that the Fernandez brothers, before their plea agreement, were exposed to life in prison? That's correct. And it's a substantial difference. I mean, for the average person, you know, a difference between life imprisonment and 24 years imprisonment may not be that important, but for somebody who's actually doing that sort of sentence, it is. But at the point of the testimony of the Fernandez brothers, they had been sentenced. Correct. And the issue was a Rule 35 context. At that juncture. What advantage could be gained to go how far below 293 or whatever the other number was for the other brother? What you wanted was that gap. Is that not correct? Well, not really. I think that their exposure at the beginning of the case was important for the jury to hear. We were able to talk about during cross-examination all these other issues. For example, drug use. For example, prior lies that they had given to law enforcement. We were able to talk about, you know, inconsistent statements and bad acts and things like that. But what was important was that we were not able to talk about the price that the government paid in order to get their testimony. We're well into the time that you've been trying to save, and it may be that the full transcript will give me the objection that I don't see. But I'm on page 855 of the transcript, 236 of the excerpt, the page you directed us to. At the top of the page, the court says, sure, you say all right. The court says, the only sentence I don't want you talking about is this page right here, the penalties. You say all right. Did you object? The only thing I'm seeing is you're saying all right. Well, I'm sure that I did, Your Honor. But I don't see it here in front of me. Pardon me? But I don't see the objection here in front of me. Unfortunately, we don't have those pages. But I'm certain that I did because I did want to go into that. I argued personally the Schoenberg case. I knew what the issues were, and I'm certain that I did. Why don't we allow you to say what time you have, and then you can respond and move on. Good morning, Your Honors. I'm June Lord. I'm representing Alejandro Sequeiros-Garcia. I want to talk about the suppression issue that I brought at the beginning. I understand that the circuits are split on whether or not a post-indictment interview can be waived with Miranda. This court in U.S. v. Carr set forth what all the circuits' positions were. And then one I didn't discuss in my brief, the United Supreme Court in Patterson v. Illinois, upheld the Miranda reading would be a sufficient way to waive it. And they all said that once the Sixth Amendment attached, I mean, once the indictment was done, the Sixth Amendment attached, and they shouldn't be able to go and elicit statements to help the prosecution. Secondly, in this case, on the record, we had a suppression hearing. When they arrested Mr. Sequeiros-Garcia, they did not read the indictment to him that was admitted in the hearing. They simply read the Miranda warnings. And the second part of that was they read the INS, or it used to be Immigration Service statement,  and that, in my excerpt of record, is E.R. 7, and that's the only notice that he signed. Mr. Sequeiros-Garcia was here legally, and he was probably as concerned about deportation as anything else. And this is the only one they read to him that he signed, and we have the English version and the Spanish version, and it says they'll give him a list of lawyers and they can hire one. That is the same issue as was in this court's case in San Juan Cruz, I think it was. They read him the different documents, U.S. v. San Juan Cruz. They read the immigration documents, and they have a different standard, and he was very confused. He didn't understand he had a right to a lawyer, I think the most important, or the right to an appointed lawyer. The most important parts are, though, that even Carr upholds my argument in the sense they did not read this indictment to him. They did not advise him that he had a right to counsel, which attached at that point. Also, I want to join in the arguments of the other counsel on the cross-examination issue. I guess that's all I have on that, if you have no questions. You've got some time if you need to use it on rebuttal. Okay. Good morning. May it please the Court, I am Josh Van De Wettering, Assistant United States Attorney from the District of Montana. I will begin by trying to clear up the issue with respect to cross-examination. And I would refer the Court first to supplemental excerpts of record, the government's excerpts of record, page 233, where Mr. Hubestall very clearly asks, I believe it's Hector, what sentence he got. You're facing a sentence of 294 months or whatever. Hector says, no, I got 293 months. A few pages later, at excerpts of records 238, Mr. Hubestall very explicitly says, that's what you're hoping to accomplish is to get your 293-month sentence, which of course is reduced. Well, but his complaint now is he couldn't get before the jury the fact that the sentence to which Fernandez was exposed was life. And, Your Honor, I would suggest that that's not what he was exposed to. The plea agreement, and I believe what Judge Siebel is referring to in the penalty section of the plea agreement, certainly warns the defendant that under the statute he faces a possible sentence of up to life. But to suggest that the government somehow has given him this deal by getting him down from life to 293 is simply wrong. He gets to 293 months based on his sentence under the guidelines and all the factors that the Court properly made. But that's not any different than, you know, advising the defendant at a Rule 11 hearing that the statutory exposure is life imprisonment. Right? That's all he wanted to get before the jury. What's wrong with putting that before the jury? The difference, Your Honor, is between prior to his being sentenced, he potentially faces a sentence up to life. Right. And, you know, the argument as well, and the reason he got the sentence way below life is because he made this deal with the government. But that's wrong. Oh, it's not wrong. That's a reasonable interpretation. Well, I believe it's wrong, Your Honor, because the sentence he gets at 293 months doesn't have anything to do with his cooperation. You mean it all benefits from cooperation are challenged to the Rule 35 potential? Exactly. But the 293 months is what he would have gotten if he had just come in and pled straight up. And how do we know that? Well, and the record may not be as clear as I would like it to be on that because we haven't included, I think, anything from his sentence. Well, at the time of the pre-negotiations or at some point, did you calculate what the guideline range would have been? Well, the 293, I believe, fell within the guideline range. Well, but it fell within the range where? At the bottom? At the top? I'm not sure, Your Honor. It strikes me as though that question was relevant, and if I had been the defendant, I would like to have been able to ask and answer that question. And, Your Honor, the government would oppose that question as, frankly, irrelevant because it suggests that the defendant's benefit for testifying is to come down from the sentence of life. And the defendant's benefit for testifying is to come down from a sentence of 293. Well, the defendant, at least potentially, gets two benefits. The first benefit is that he pleads, and the plea contains within it an agreement to testify. Correct. And that brings down the sentence from some indeterminate but potentially very high sentence to this 293 months, which is still pretty high. Then he gets a further benefit with the possibility of a Rule 35 motion. And the judge apparently allows testimony as to the further benefit but does not allow testimony as to the first benefit. I don't get it. Well, I would respectfully disagree, Your Honor. I guess I split that agreement to plea versus to get the cooperation because the benefit from pleading is not a benefit that comes from the government, really. I mean, we haven't offered him any. Well, of course you have. You've offered him not only the guideline range, but you've offered him the possibility of the 35. So you could have argued, well, listen, it wasn't that great a benefit, which you are now arguing to us. Well, I don't think – I don't mean to be arguing that it's not that great a benefit. What I mean to be arguing is it's not a benefit to the government that comes from the government. It comes from the court. Well, let me ask a question this way. Does a plea agreement have a provision with respect to sentence? Your Honor, I don't know the answer to that because I don't have that plea agreement with me. Well, do you know this about the plea agreement? Did the plea agreement, to the extent that it embodied an expectation of cooperation, which I take it it did, was that cooperation under the plea agreement expected to materialize at the point of sentencing, or did it expressly go to a Rule 35 stage, which seems to be the context of what happened at this trial? I believe it went – I believe the plea agreement was written as either or, but there was no benefit for cooperation at the time of sentencing. It all ended up in the Rule 35 side of the legend. So the plea agreement, which counsel wished to get admitted into evidence, was itself expressed with respect to a Rule 35 transaction, is that right? The possibility of either a 5K1 or a Rule 35. And the reality, of course, was that there was – the government did not bring a 5K1 motion. The government brought only the Rule 35. Did the plea agreement talk in terms of any particular sentence that the government would be prepared to recommend or acquiesce in in the event of the substantial cooperation? No, Your Honor. That's left wide open in the plea agreement with the defendant agreeing that he understands that it's the government's choice whether or not to make a recommendation at all and how much that recommendation is going to be. So that the unwillingness of the district court to permit certain questioning by counsel did not relate to any particular number below 293 or whatever? No. No, Your Honor. In fact, the defendant was allowed to question these witnesses with all – as to the entire substantial assistance portion of the plea agreement and the sentence they got. And, of course, that they expected to get a further – or a reduction in sentence because of their cooperation. So the limitation that the district court imposed, Judge Fletcher quoted from the particular page of the transcript, that was a limitation that related to, no, you can't go into the fact that the maximum sentence might have been light? Exactly. And later on, I believe at page 397 of the excerpts, the court – the district court clarifies a little bit, saying that the court doesn't want the jury to be confused and said that he's not going to allow the plea agreements into evidence. If I let the plea agreements in, there's much information in there that wasn't discussed that may be confusing. And, of course, the plea agreement is many pages long with waivers of trial rights and other issues that aren't germane to the case. And I would refer the court then, with respect to the other witness, to pages 374 and 377 of the excerpts of record. That's Eduardo, where there's essentially the same exchange. The defense is able to cross-examine Eduardo on what he got, which I think was 210 months, and that he expects, because of his testimony, to get a reduction in that sentence that he received, the 210-month sentence. And, as before, he was prohibited from putting in the plea agreement with the maximum possible sentence of life. With respect to the issue of what warnings need to be given to the defendant before questioning him after indictment, I believe the Carr case really inures to the benefit of the government. Carr case rejects the holding of other circuits, and essentially rejects the standing opinion that counsel cites in Patterson, where they would prohibit any kind of questioning once the Sixth Amendment right has attached. Carr says that, provided Miranda warnings are given, and the defendant is informed, and I'm quoting, that formal judicial proceedings have begun, and that's Carr 742 F. 2nd at 496. As long as those standards are met, the admissions are admissible. I believe that's what's happened in this case. I don't think there's a real dispute that Miranda warnings were read twice, in fact, to this defendant, and there's no dispute that he did not sign the warning form, although the agents testified that he affirmatively waived his Miranda warnings. In addition to that, he read immigration warnings, which are somewhat similar, and did sign that form. Finally, he was informed, he was given a copy of the indictment in English, but he was also informed verbally, according to the agents, that he was under arrest for drug-related offenses. I would submit to this court that that satisfies the requirement that he be notified that formal judicial proceedings have begun. So in that regard, the United States believes that Carr nursed the benefit of the United States and shows that the agents in this case did exactly what the law requires them to do, told him what he was being charged with, gave him his Miranda warnings, got his waiver of those warnings, and only then proceeded to question him. Unless the panel has further questions, I don't think there's anything more I could add. I have one question. With respect to the appellant Marquez-Lerma, do I understand the government? I think there was a claim, though it was not argued this morning, that there should be a resentencing, and the government agrees to that under the Ameline? Marquez should be sent back for resentencing. Thank you. We've saved some time for rebuttal, either or both of you. I'll be very brief. The benefits that were gained, and maybe not so much in this case, but in the broader spectrum, that government witnesses get oftentimes boil down to charges that are dismissed. And Hector's, I mean, Eduardo's plea agreement, they dismissed the conspiracy count against him. Oftentimes the government will not take a particular position at sentencing. Wait a minute. Are you saying now that you were prevented from getting that fact before the jury, that the conspiracy count was dismissed? Not that they dismissed count one, but we were prevented from talking about the penalty. What about the government's position that the only thing that mattered was, one, the 293 or whatever was within the sentencing guidelines, right? So there was really no favor to you. I mean, the government did no favor to the Fernandez brothers in terms of sentencing imposed, as opposed to the promise of the Rule 35 motion. Well, that's not entirely correct, because they can dismiss count one, for example, that might have a mandatory statute. Well, I thought I asked you, were you prohibited from getting before the jury the fact that, you know, any count or any charge was dismissed? You weren't, were you? We weren't prohibited from getting that before the jury, but we were prohibited from getting the potential penalty. Also, in instances like this, the government can withdraw a rule, or rather an 851 notice, or they can not file an 851 notice, which is mandatory minimum sentencing, which incidentally takes the discretion away from the sentencing judge and places it in the hands of the prosecutor. So there's a lot of things that we could cross-examine on in terms of penalty or detriment avoided by virtue of the Lee Agreement. And that's why I think that Schoenberg should be extended to allow cross-examination into those issues. You must be missing something when you're concerned about the mandatory minimum. The sentence had already been imposed on each of the parties. In this case, yes. Well, how would the jury be helped in knowing that the fashioning of the sentence had a mandatory minimum ingredient in it? Well, because the jury, this is what they were originally charged with. The jury, it would be helpful for the jury to know what they were originally charged with, regardless of what the sentence that was ultimately imposed were. In other words, they cooperate with the government. The government agrees to dismiss a particular charge or not file an 851 notice. From the jury's point of view, isn't the question whether the witness before the jury is going to gain something from saying one story rather than another? Absolutely. And the relevant scenario is, where am I now? I'm at 293. Where might I go? Somewhere lower. Yes. But I think that the contract is, we're not talking about particular provisions of the contract between the witness and the government.  The withdrawal or the failure to file an 851 notice or things like that. And I think that information was important for the jury to understand as well. Okay. Thank you. Thank you. Ms. Lord? Just one point, Your Honor. Mr. Sequeiros-Garcia, as I pointed out in my brief, did not understand English. Now, in the United States versus Carr, this court said that in that case, Carr was informed of the indictment. In this case, the record shows that they said they might have told him about the indictment. They handed it to him. He couldn't read English. It was in English. So I don't think he was adequately informed, and I don't think he voluntarily waived his rights or known rights. Okay. Thank you very much. The case of United States versus Marquez-Lerma and others is now submitted for decision. That concludes our oral argument session for this morning. We will reconvene tomorrow at 9 o'clock. Thank you very much for your arguments, counsel.
judges: Tashima, W. Fletcher, Pollak